MARY PETERSDORF v. LOUIS E. MALZ AND OTHERS.

May 4, 1917.

Nos. 20,217—(54).

**Fraudulent judgment — action to obtain priority against.**

1. In an action for a decree declaring the lien of a certain judgment inferior to the lien of a judgment in plaintiff's favor against the same defendant, subsequently recovered, it is *held*:

(1) That the evidence sustains the findings of the trial court to the effect that the judgment complained of was procured by the fraud and collusion of the parties, for the purpose of encumbering certain land owned by defendant and thereby defrauding creditors, particularly plaintiff, and that the claim upon which the judgment was founded was not a *bona fide* indebtedness of the defendant.

(2) A judgment founded upon a valid indebtedness, though procured by plaintiff with the active co-operation and consent of defendant for the purpose of giving to plaintiff a paramount lien upon certain land, and to thereby delay other present and prospective creditors of defendant,

1Reported in 162 N. W. 474.

constitutes a preference and, in the absence of some special benefit to the debtor, is voidable only in bankruptcy or insolvency proceedings.

(3) Such a preference is not void at common law, even though the parties were prompted by bad motives, unless the debtor, with the cooperation of the preferred creditor, thereby secured some special advantage to himself, aside from the accomplishment of his purpose to prefer the particular creditor and the results necessarily incident to such preference.

Action in the district court for Le Sueur county against Louis E. Malz, Henry Malz and Augusta Petersdorf to declare plaintiff's judgment against defendant Louis E. Malz to be paramount to certain other judgments described in the complaint. The facts are stated in the opinion. The case was tried before Olsen, J., who made findings and ordered judgment in favor of plaintiff. From the order denying their motion for a new trial, defendants appealed. Reversed.

*Thomas Hessian,* for appellants.
*C. J. Laurisch* and *F. C. & H. A. Irwin,* for respondent.

Brown, C. J.

Plaintiff was formerly the wife of defendant Louis E. Malz; she is the sister of defendant Augusta Petersdorf, and defendant Henry Malz is the father of defendant Louis. In the statement of the case defendant Louis will be referred to as defendant, and defendant Augusta Petersdorf, as Augusta. This will avoid repetition of their names in full, and leave the facts and the case just as clear. From the time of their marriage and until the commencement of the action for divorce, presently to be mentioned, plaintiff resided with her husband, defendant Louis, on a farm either owned or leased by him, and for some years and up to about the time of the divorce action Augusta resided with them. Her presence caused trouble between plaintiff and her husband, brought about by a belief on plaintiff's part that the greater share of the husband's affections were bestowed upon Augusta, to the neglect of plaintiff, the wife. It culminated in an action by plaintiff for divorce, which was commenced in October, 1913, and wherein claim was made for alimony and suit money and for the recovery of an amount of money contributed to the family affairs by plaintiff after the marriage. Prior to the action plaintiff

left the home of defendant and had become a member of the household of her parents.

Soon after the commencement of that action, and on October 23, 1913, defendant Henry Malz brought suit against defendant Louis, his son, to recover upon two promissory notes, of the aggregate amount of $1,-200, alleged to have theretofore, for a valuable consideration, been made and delivered by defendant to plaintiff therein. No defense was interposed and default judgment was duly rendered on November 18, 1913, the docketing of which constituted a lien upon the land described in the complaint in this action, which was then and still is owned by defendant.

In March, 1914, Augusta commenced an action against defendant to recover for services alleged to have been performed by her while a member of defendant's household, as heretofore stated, claiming in her complaint the sum of $2,577.87. No defense was interposed, and she too was awarded a judgment against defendant for the full amount of her claim, of date April 9, 1914, the docketing of which also constituted a lien upon the land described in the complaint in this action.

Neither judgment has ever been paid, and each now stands of record a lien against said land.

Thereafter the divorce action proceeded to trial, as the result of which plaintiff was awarded a divorce, and the sum of $3,048.35, alimony and suit money, including therein the sum of $970, theretofore loaned or advanced to defendant during the marriage relation. The judgment was declared a specific lien upon the land described in the complaint, against which by operation of law the other two judgments were on the face of the record paramount liens.

The land is a tract of about 27 acres and insufficient in value to satisfy all these judgments, and probably insufficient to satisfy the first two thereof. Defendant has no other property out of which plaintiff's judgment may be satisfied, and she brought this action for a decree of the court declaring her judgment prior and paramount to those mentioned, on the ground, as alleged and charged in the complaint, that such judgments were obtained by the fraud and collusion of the parties; that neither represented or was founded upon any actual or *bona fide* indebtedness, and were procured by plaintiffs therein and consented to by defendant for the sole purpose of defeating the collection of any judg-

ment plaintiff might thereafter obtain in her divorce action. Defendants answered, denying the allegations of fraud and collusion, asserting the existence of a valid indebtedness upon which the judgments were founded and the good faith of the parties.

The action was tried by the court without a jury, and judgment was ordered for plaintiff substantially as demanded in the complaint, and to the effect that her judgment should take priority over those obtained by defendants Henry Malz and Augusta Petersdorf. Defendants joined in an appeal from an order denying a new trial.

The trial court found: (1) That the judgment recovered by defendant Henry Malz was not based upon a valid or *bona fide* indebtedness, and was procured by collusion between the parties thereto, for the sole purpose of acquiring an apparent lien upon the land in question which would take priority over any judgment this plaintiff might recover in her divorce action, and to thereby defraud plaintiff, and prevent the enforcement of such judgment, should she recover one, against this land; (2) that the claim upon which the judgment in favor of Augusta was founded constituted a valid indebtedness and obligation on the part of defendant, but that the judgment was procured by collusion between the parties and for the purpose of defrauding plaintiff and obstructing the enforcement of any judgment she might obtain in her divorce action. As conclusions of law the court found and held that both judgments were fraudulent in law and should be declared subordinate to that of plaintiff, which was declared a paramount lien upon the land.

The assignments of error challenge the findings of fact as well as the conclusions of law, and therein are presented the principal questions in the case. Though the question of fraud and collusion is common to both judgments, there is a substantial difference in respect to the conclusion of law to be drawn from the findings that the judgment in favor of Augusta was founded upon a valid existing indebtedness. We shall therefore consider the judgments separately.

1. With respect to the judgment in favor of defendant Henry Malz our conclusion, after a somewhat careful consideration of the record, is that the findings of the court both as to the existence of an indebtedness and the alleged fraudulent purpose of the parties, are amply supported by the evidence. There is no direct and positive evidence of fraud, but

the facts and circumstances disclosed made the question one of fact for the trial court. The trouble between plaintiff and her husband was caused by the presence of Augusta at the family home, which was against the wishes of plaintiff, and at the express solicitation of defendant. It resulted in the action for divorce, and the record shows that immediately after its commencement, and following an application for alimony and suit money, defendant commenced to dispose of his personal property, and continued the same until practically all he owned was disposed of except the land in question. The father was undoubtedly aware of his efforts in this respect. Both knew of the state of the title to this land, and it is quite clear that the father was permitted to obtain the judgment, upon no valid claim, in anticipation of an alimony judgment, and for the purpose of hindering the enforcement of the same. We therefore sustain the findings of the trial court upon this branch of the case, and also the order denying a new trial as to defendant Henry Malz.

2. A different situation is presented as to the judgment in favor of Augusta. The court found that this judgment was founded upon a valid indebtedness and obligation of defendant for labor and services rendered by Augusta in defendant's household, as heretofore stated. But the court further found that the judgment was the result of a fraudulent plan agreed to by the parties thereto to defeat the collection of any judgment plaintiff might recover in her divorce action. And that by reason of this fraudulent purpose the court held that the judgment was invalid as to plaintiff, notwithstanding the fact that the indebtedness made the basis thereof was a *bona fide* claim against the defendant.

We are unable to concur in that conclusion. The most we can spell out of the evidence, as to the object and purpose of the parties, viewed in the light of the fact that the claim was a valid one and justly due to plaintiff in that action, is that the parties intended to secure a judgment that would be superior and paramount to any that plaintiff herein might subsequently recover in her divorce action. In other words, it is a case where a debtor gives a preference to a particular creditor, by facilitating the recovery of a judgment against him, which will, when docketed, constitute a lien upon land, which but for the judgment other creditors might cause to be taken in payment of their claims. The case is the same as though defendant had confessed judgment, or had given

a mortgage upon his interest in the land to secure the indebtedness, and for the express purpose of favoring the particular claim, and of obstructing the enforcement of any other claim against the same property. A transaction of that kind, when no special benefit accrues therefrom to the debtor, is not void or even voidable at common law, and can be successfully assailed only in bankruptcy or insolvency proceedings. Barry v. O'Connor, 33 Minn. 29, 21 N. W. 840; Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237; Mackellar v. Pillsbury, 48 Minn. 396, 51 N. W. 222. The rule is by statute otherwise in some jurisdictions. It was lawful for defendant to give and for Augusta to receive a preference over other present or prospective creditors. In doing so in this instance a legal remedy was pursued and the motive of the transaction is unimportant. 1 Moore, Fraudulent Conveyances, p. 494, § 23; Fargason & Co. v. Hall, 99 Ala. 209, 13 South. 302; Snabgerger v. Fahl, 195 Pa. St. 336, 45 Atl. 1065, 78 Am. St. 818. The case of a preference to secure or to pay an existing indebtedness stands upon an entirely different footing than the sale or mortgage of property for a present consideration coupled with an intent to delay or defraud creditors. 2 Moore, Fraudulent Conveyances, p. 592, § 9; Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60. In the latter case, if the purchaser have notice of the wrongful purpose, the title acquired by him becomes tainted with the fraud, and the transaction may be called in question without resort to bankruptcy or insolvency proceedings. But to defeat a sale or encumbrance of property amounting to a preference, extended to an existing creditor, when not challenged in such proceedings, it must be shown that the creditor participated in some fraudulent purpose of the debtor aside from the intention to give and receive a preference and to effect the results necessarily incident thereto. Crookston State Bank v. Lee, 124 Minn. 112, 144 N. W. 433; Bigelow, Fraudulent Conveyances (1911 ed.) p. 593; Giddings v. Sears, 115 Mass. 505; Ferguson v. Spear, 65 Me. 277; Knower v. Central Nat. Bank, 124 N. Y. 552, 27 N. E. 247, 21 Am. St. 700; 2 Moore, Fraudulent Conveyances, p. 593, § 9. In the case at bar no special benefit accrued to the debtor by reason of the judgment, and, if the claim upon which it was founded is a valid obligation, plaintiff has no standing in this form of attack.

It follows, since the trial court found the claim to be an actual in-

debtedness, that its conclusions of law upon this branch of the case were erroneous. The preference was valid, and the findings disclose no fraud within the rule controlling such cases which vitiates the transaction; no special benefit is found to have accrued to defendant, other than the intended preference and results necessarily incident thereto. That is not sufficient. There must therefore be a reversal. But we think a new trial rather than a final judgment should be ordered. The trial court proceeded on the theory that fraud destroyed the preference, arising from the judgment, and quite likely did not go fully into the merits of Augusta's claim. We are impressed on the facts disclosed by the record that it is quite large, and think further inquiry into the merits thereof should be had.

We affirm the order appealed from as to defendant Henry Malz, but reverse and direct a new trial as to defendant Augusta.

It is so ordered.