## T. E. NASH, SUBSTITUTED AS PLAINTIFF FOR MARSHALL STATE BANK, v. NEIL EDWIN BENGTSON AND OTHERS.[1]

December 13, 1929.

No. 27,537.

*Johnson & Schaefer,* for appellants.
*J. V. Williams* and *A. R. English,* for respondent.

HILTON, J.

Defendants appeal from a judgment. Action to recover on promissory notes and to set aside and have declared null and void a

[1]Reported in 228 N. W. 177.

quitclaim deed and a bill of sale and to have the real and personal property covered by said instruments made subject to an execution on judgment to be recovered in the action. T. E. Nash, trustee in bankruptcy of Neil Edwin Bengtson (hereinafter referred to as Edwin) was substituted as plaintiff in this case. The case was tried to the court without a jury.

Andrew Bengtson, husband of Hannah Bengtson and father of Edwin, died intestate on January 6, 1928, the owner of contiguous tracts of farming land (339 acres) worth $30,000 and personal property of the value of approximately $4,600, all free from encumbrance. A considerable portion of the personal property was cash kept in a safety deposit box. The defendant Genevieve Bengtson is the wife of Edwin. Andrew left surviving him as his only heirs his widow, Hannah (61 years of age), the son Edwin, and daughter Dora Seiler. The widow inherited a life estate in the homestead (approximately 74 acres) that had been occupied by the father and mother, and by Edwin and his wife for a number of years, and an undivided one-third of the remaining real estate. Edwin and the daughter, Dora, each inherited one-third of all the real estate subject to the life estate of Hannah in the homestead. Each of the three heirs was entitled to a one-third interest in the personal property.

Edwin at the time of the father's death was heavily indebted, his liabilities consisting of both secured and unsecured obligations. He was then insolvent. He owned livestock and machinery worth $1,890, 1,200 bushels of corn, an undivided one-half interest in 160 acres of unimproved farm land some miles distant from the homestead in which he had no equity at that time. He owed approximately $13,625 to various creditors, of which original plaintiff bank was one, and in addition to that amount he had executed mortgages on the land last above mentioned aggregating $13,800. All of his said indebtedness was unpaid and a considerable portion past due on January 6, 1928, and at the time of the commencement of this action on January 23. A lis pendens was filed; an answer dated February 8 was interposed and a reply served.

On January 7, 1928, the day after his father's death, Edwin went to a near-by village and consulted a local attorney (not one of the present counsel) and at that time executed a deed conveying all his right, title and interest in and to all the real estate owned by his father at the time of his death, to his mother (his wife not joining therein) which deed was duly recorded on January 10. On the same day he made a bill of sale to his mother of all his interest in the personal estate left by his father, the net value of Edwin's interest therein after expenses of administration being about $1,300. A month later, on February 7, 1928, defendant Genevieve Bengtson and Dora Seiler and her husband conveyed their interest in the 339 acres of land by quitclaim deed to the defendant Hannah, which deed was recorded February 11, 1928. On February 7, 1928, Hannah conveyed to defendant Edwin all her right, title and interest in the homestead above referred to. On February 7, 1928, Edwin gave a chattel mortgage to his uncle on certain of his personal property to secure claimed past unpaid indebtedness of $2,000. He also then gave his brother-in-law, Seiler, a bill of sale of 1,200 bushels of corn. On June 4 he gave to another brother-in-law a chattel mortgage covering all the crops on the 339 acres, which he was then cropping and had been for 16 or 17 years as a tenant, and also on his share of the crops on some other leased land.

Edwin filed a voluntary petition in bankruptcy on July 9, 1928, at which time he still had all of the indebtedness that was in force at the time of his father's death.

The court found that such conveyances by defendant Edwin and his wife to his mother rendered him insolvent; that they were made without adequate consideration and with the intent to hinder, delay and defraud Edwin's creditors; and that the same were received by Hannah with full knowledge of such intent. The resultant and necessary conclusions of law follow; the conveyances mentioned were declared to be fraudulent and void, and a decree entered setting them aside and canceling and annulling them of record. A motion for amended findings of fact and conclusions of law was denied, judgment entered, and appeal taken.

Defendants call in question the sufficiency of the evidence to justify the findings of fact and conclusions of law. It was sufficient. Defendants advance the claim that "the exchange of properties" was made for sufficient consideration and was not made with intent to hinder, delay and defraud creditors; that Hannah had no knowledge of said intent; that the exchange of property was made pursuant to a family understanding; that Edwin was to have the homestead and the daughter, Dora, was to have another 80-acre tract upon which was to be erected a new set of buildings, the mother to have all the remainder of the real estate; that this arrangement had been made by the father in his lifetime. Such understanding, if it existed, does not change the situation here.

Defendants insist that fraud is not to be presumed and that the burden is on the plaintiff to establish by strong and satisfactory evidence:

"(1)  That the conveyance was voluntary and without consideration.

"(2)  That the conveyance operated to make Edwin insolvent.

"(3)  That he intended by the conveyance to defraud his creditors.

"(4)  That the grantee received and accepted the conveyance with knowledge of such intent."

If Hannah knew of the insolvency of Edwin it was not necessary that she should know of his fraudulent intent and purpose. Knatvold v. Wilkinson, 83 Minn. 265, 86 N. W. 99. The trial court found affirmatively on all four propositions. There was ample evidence to support such findings.

"Every conveyance made  *  *  *  by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made  *  *  * without a fair consideration." G. S. 1923 (2 Mason, 1927) § 8478.

A fair consideration is defined by G. S. 1923 (2 Mason, 1927) § 8477, which reads:

"Fair consideration is given for property, or obligation, (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or (b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

Defendants claim (with some support from the evidence) that Edwin was indebted to his mother in the sum of $400. The conveyances cannot be said to have been given in payment of antecedent debts as in Watson v. Goldstein, 174 Minn. 423, 219 N. W. 550. The question of fraudulent intent was one of fact. G. S. 1923 (2 Mason, 1927) § 8470. Consideration as referred to in § 8478 means one which fairly represents the value of the property transferred. Schlecht v. Schlecht, 168 Minn. 168, 176, 209 N. W. 883.

As to the right of an insolvent debtor to secure a homestead for himself and family and under certain conditions to exchange non-exempt property for exempt in order to secure the benefit of the statutory exemptions there is no doubt. However the facts in this case do not bring defendants within that rule, as an examination of the following authorities cited by defendants will disclose: Stricker v. Trullinger, 172 Minn. 547, 216 N. W. 231; Jacoby v. Parkland Distilling Co. 41 Minn. 227, 43 N. W. 52; (see Small v. Anderson, 139 Minn. 292, 166 N. W. 340; Kangas v. Robie (C. C. A.) 264 F. 92); Forsberg v. Security State Bank (C. C. A.) 15 F. (2d) 499, 49 A. L. R. 913; and State Bank of Round Lake v. Riley, 176 Minn. 550, 224 N. W. 237.

There was here undue and unusual haste in making the transfers. Edwin was an embarrassed debtor. The conveyances were between near relatives and were prima facie fraudulent as to pre-existing creditors. They were not made in good faith nor was there a fair consideration. 27 C. J. 484, et seq; 3 Dunnell, Minn. Dig. (2 ed.) § 3842, et seq. and cases cited; Welch v. Bradley, 45 Minn. 540, 48 N. W. 440; Barnard v. Seaman, 169 Minn. 409, 211 N. W. 473; Walsh v. Byrnes, 39 Minn. 527, 40 N. W. 831; Sovell v. County of Lincoln,

129 Minn. 356, 152 N. W. 727; Thysell v. McDonald, 134 Minn. 400, 159 N. W. 958, Ann. Cas. 1917C, 1015; Churchill & Alden Co. v. Ramsey, 45 S. D. 454,. 188 N. W. 742.

All the facts and circumstances disclosed by the record clearly warranted the court in reaching the conclusions arrived at. The transfer on January 7, 1928, was manifestly made for the purpose of putting Edwin's property beyond the reach of his creditors. The purpose was to defraud them. If defendants were successful here that end would be accomplished. It was the duty of the court to prevent the attempted fraud.

We have given careful consideration to the various assignments of error and find no ground for reversal.

Affirmed.